(42 App. Div. 562.)

## BALCH v. CITY OF UTICA et al.

(Supreme Court, Appellate Division, Fourth Department.   July 18, 1899.)

1. CITIES—POWER TO CONTRACT.
   Under a city charter authorizing it to abate and prevent nuisances, and to prevent the spreading of disease, and to contract in behalf of the city for such purposes, where a deposit of offal and garbage is dumped on grounds near a river flowing through a city, and is a menace to the health of the inhabitants, and a public nuisance, the city has a right to contract for the removal of such garbage and offal.

2. SAME—DURATION OF CONTRACT.
   Under Laws 1894, c. 667, giving local authorities of cities power to contract with the owners of any process for sewerage, either for the use of the process for a term of years or for the purchase of the same, a common council of a city, authorized by its charter to abate nuisances and provide for the health of the city, can enter into a contract for the removal and reduction of its garbage for a term of years.

3. SAME.
   A provision of a charter imposing on the owners or occupants of premises the duty to remove and abate nuisances therefrom does not prevent the common council from taking measures for the removal and reduction of garbage at the expense of the city for the protection of the public health.

Appeal from special term, Oneida county.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

Edwin H. Risley, for appellant.

G. C. Morehouse, for respondents city of Utica and Cantwell.

S. M. Linsley, for respondent Stappenbeck.

NASH, J.   This is a taxpayer's action to set aside the proceedings of the common council of the city of Utica, and to restrain the mayor and clerk of the city from signing and delivering a contract directed by the common council to be made by and on behalf of the city with the defendant Stappenbeck.   There is no "case" before us, the appeal not having brought up anything but the judgment roll. The only question here is whether or not the findings of fact sustain the conclusions of law.   There is nothing in the findings to support the allegations of the complaint that the act of the common council in accepting the bid of Stappenbeck was fraudulent, corrupt, and illegal, or beyond the powers of the council as granted by the charter of the city and the laws of the state, or that the alleged proposed acts of the mayor and clerk are illegal, and in violation of the rights of the plaintiff and other taxpayers of the city.   The court found that the city of Utica is a municipal corporation duly organized and incorporated under and pursuant to the statutes of the state of New York; that it has a common council, composed of a mayor and 15 aldermen,—1 alderman for each of the 15 wards of the city, —but that the mayor has no vote as such member of the common council except in the case of a tie vote in the election or appoint-

ment of an officer or committee by the common council; that under and by virtue of said statutes said city of Utica has power to sue and be sued, complain and defend, use a common seal, and receive by gift, grant, devise, bequest, or purchase, and hold and convey, such real and personal estate as it may require. The court made a further finding of fact, numbered 5:

"Fifth. That under and by virtue of said statutes the said common council was authorized and empowered, among other things, as follows: (1) To have the care, management, and control of the property of the city and its finances. (2) To ordain and make ordinances such as it shall deem expedient for the good government of the city, for the benefit of trade, commerce, and health of the inhabitants thereof, and to prevent, abate, and remove nuisances, and to take such other means as it shall deem necessary to prevent the introduction in the city or the spreading therein of any pestilential or infectious disease, and to lay out and repair streets, drains, and sewers with all necessary wells, grates, and other things requisite and proper therefor, and to clean the same. (3) To audit all claims and accounts against the city, and raise, levy, and collect taxes upon the property within said city for defraying the expense of public improvement therein, and the contingent and other expenses thereof so audited, not exceeding forty thousand dollars per annum, exclusive of the expense of collecting the same. (4) To enter into contracts for and on behalf of said city for the purposes and powers mentioned in this fifth finding."

The court further found: That prior to the commencement of this action the common council had leased from one William Hatfield certain lands located within said city, and upon the banks of the Mohawk river, to be used, and which for several years last past were used, as a dumping ground for the offal, garbage, and night soil collected in said city from the houses and premises of the inhabitants thereof, which said offal, garbage, and night soil were deposited upon the surface of said lands. That in the spring and fall of the year the waters of the said Mohawk river were accustomed to rise, and overflow said dumping grounds of said Hatfield, and transport and carry away therefrom large quantities of said offal, garbage, and night soil into and with said overflowing waters as they flowed past and over said dumping grounds. That said Mohawk river is a public, navigable stream of water; that the said deposit of said offal, garbage, and night soil upon said grounds was a damage and a menace to the health of the inhabitants of said city, and was a public nuisance, and numerous complaints concerning such use of said grounds had been made to the health officers of said city by the inhabitants thereof, and the same had been communicated by said health officers to the aldermen of said city prior to the making of the contract hereinafter mentioned. That on or about June 17, 1898, said common council duly directed that specifications be prepared for disposing of said offal, garbage, and night soil in a sanitary manner, and filed with the city clerk, and when so filed the city clerk was directed to publish notices for proposals for such disposition thereof; and that said specifications were duly prepared and filed, and said notices were thereafter duly published by the city clerk in the official newspapers for at least three times. That on or prior to July 1, 1898, four sealed proposals under such specifications and notice were received by the common council, duly opened by the mayor in the presence of and at a regular meeting of said common

council held on July 1, 1898, and were canvassed thereat by the city surveyor. That three of said proposals complied with the requirements of such specifications, to wit: McKeough Bros. for a term of 5 years at $18,000 per year, and for 10 years at $12,000 per year; one by Dirk, Driscoll & Co. for 5 years, $11,000 per year, and for 10 years at $10,000 per year; one by defendant Stappenbeck for 5 years at $8,000 per year, and for 10 years at $6,500 per year. The fourth proposal was by said Hatfield, to dispose of the same by means of trenches at $2,000 per year, which said Hatfield's proposal was not in compliance with said specifications. That on or about July 16, 1898, at a regular and public meeting of said common council, said common council duly accepted said proposal of said Stappenbeck upon a yea and nay vote upon a roll call by vote of 13 in favor and none against, and upon like vote and roll call said common council duly passed an ordinance for the disposal of said offal, garbage, and night soil for the term of 10 years, and duly directed upon like vote and roll call the mayor and clerk to enter into said contract with said Stappenbeck according to said ordinance and acceptance. That on or about July 29, 1898, said mayor vetoed said action of said common council, and on said July 29, 1898, at a regular and public meeting of said common council, said common council, upon a yea and nay vote upon a roll call, by a vote of 11 in favor and 2 against, duly passed the following resolution: "Resolved, that the resolution of the council stand, notwithstanding the objections of the mayor;" which said resolution and proceedings were thereupon duly entered in the proceedings of the common council, and duly signed by its clerk. That thereafter the contract set forth in the complaint was prepared, and duly signed by said Stappenbeck. That thereafter an injunction was procured by the plaintiff restraining the mayor and clerk from signing said contract.

We think the conclusion of law that the contract was and is a valid contract, binding upon the city, and that the injunction which had been obtained in the action should be dissolved, and the complaint dismissed, lawfully follows as a matter of course from the findings of fact, and that the judgment dismissing the complaint, with costs, should therefore be affirmed.

We are also of the opinion that under the charter of the city (chapter 18, Laws 1862) and acts amendatory thereof, referring to the provisions thereof which are disclosed by the pleadings and referred to in briefs of counsel, reading into the charter, chapter 667, Laws 1894, giving to the local authorities of the several cities of the state power to enter into contracts with the owners of any process or apparatus for the purification of water or sewerage, and either contract for the use of the apparatus and process for a term of years, or for the purchase of the same, as to them shall seem advisable, the common council have ample power to enter into a contract for the removal and reduction of the garbage of the city for a term of years. We do not think that the provision of the charter imposing the duty upon the owner or occupant of premises within the city to remove therefrom and cleanse or abate any nuisance on the premises, and to remove or destroy any unwholesome or offensive substance or sub-

stances likely to become unwholesome from any street, lot, or build-
ing, and the duty imposed upon the common council to provide by
resolution that the owner or occupants of premises perform these
duties, limited the common council to that method of removing or
preventing nuisances, or prevented the local authorities from taking
such measures and adopting such means for the removal and reduc-
tion of garbage at the expense of the city as might be deemed nec-
essary for the protection of the public health. This method of tak-
ing care of and removing the garbage of the city has of late years
been discontinued, and the method of removal by the city adopted.
The practice of dumping it on land within the city limits and on
the banks of the Mohawk river has not only created a nuisance as
the garbage lay upon the land awaiting the coming of freshets to
carry it away, but it is a practice which, as the stream is navigable,
would undoubtedly, upon proper complaint, be interfered with by the
state. The people of Utica should have the benefit of the best mod-
ern sanitary means adopted for the preservation of health and the
prevention of pestilence, and we think that under the fair and lib-
eral interpretation of the statutes which should prevail it may be
given to them. We regard the numerous suggestions of illegality in
the proceedings of the common council in making the contract under
consideration untenable.

Judgment affirmed, with costs. All concur.